**JESSE MERRITHEW, OSB NO. 074594**
Email: jesse@lmhlegal.com
**LEVI MERRITHEW HORST PC**
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

**ALICIA LEDUC MONTGOMERY, OSB NO. 173963**
Email: alicialm@stritmatter.com
**STRITMATTER LAW**
3600 15th Ave. West, #300
Seattle, Washington 98119
Telephone: (206) 448-1777

*Attorneys for Plaintiff Maverick Lyon*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**EUGENE DIVISION**

| | |
|---|---|
| **MAVERICK LYON,**<br><br>Plaintiff,<br><br>vs.<br><br>**CITY OF ALBANY, MATT THOMAS, ENGLE DIAZ, JOSHUA HALL, and BENTON COUNTY,**<br><br>Defendants. | Case No. 6:26-cv-2412<br><br>**COMPLAINT**<br><br>Civil Rights Action (42 U.S.C. § 1983) Violation of Fourth Amendment – Excessive Force; Battery; Negligence<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. On January 5, 2026, David and Laura Lyon told Benton County Probation that their oldest son, Dakota Lyon, relapsed into using drugs and was acting dangerously toward family members. The parents asked the County to take Dakota into custody, which the County could have

done but refused to do. The next day, David called 911 after Dakota's drug-induced behavior escalated to taking their youngest son, Maverick Lyon, hostage at knifepoint inside the home.

2. Albany Police responded to David's 911 call for help by surrounding the Lyon house, identifying Maverick and Dakota through the window, ignoring Maverick's pleas of mouthing "Help me!" to the officer through the window, and told Maverick to come outside and drop the knife Maverick was holding for self-defense. But when Maverick did as instructed, Albany Police officers shot Maverick at least five times in the chest, back, and face *after* he had dropped the knife, came outside, and presented no threat.

3. Documents show the police were familiar with Dakota and knew at the time that Maverick was the victim, not the suspect. Rather than provide immediate medical aid, Albany Police yelled at Maverick to roll over and submit to handcuffing while Maverick was on the ground bleeding.

4. Astoundingly, Maverick survived. He spent four weeks in the hospital undergoing multiple rounds of surgeries, resulting in the removal of part of his lungs, appendix, and spleen. He missed the spring semester at St. Anslem College, and his senior year playing collegiate lacrosse. The injury to his face requires orthopedic and plastic surgery to repair.






LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

5. Plaintiff Maverick Lyon brings this case for damages for the violations of state and federal law committed by Defendants.

**JURISDICTION**

6. This court has jurisdiction over the subject matter under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

**VENUE**

7. Venue is proper within the District of Oregon because all the events giving rise to these claims occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). Specifically, all of the acts alleged herein occurred on Twins Lane, Albany, Benton County, Oregon.

**PARTIES**

8. Plaintiff Maverick Lyon is an adult resident of the state of Oregon, temporarily attending school in New Hampshire. At the time of the events of this complaint, he was at home staying with his parents in Albany, Benton County, Oregon.

9. Defendant City of Albany is a municipal corporation operating in the state of Oregon. It is responsible under the Oregon Tort Claims Act for the torts of its employees acting within the course and scope of their employment and for its own torts.

10. Defendant Matt Thomas is a police officer in the Albany Police Department and an employee of the City of Albany. In all his conduct described in this complaint he was acting under color of law and within the course and scope of his employment with the City of Albany.

11. Defendant Engle Diaz is a police officer in the Albany Police Department and an employee of the City of Albany. In all his conduct described in this complaint he was acting under color of law and within the course and scope of his employment with the City of Albany.



LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

12. Defendant Benton County is a county in the state of Oregon. It is responsible under the Oregon Tort Claims Act for the torts of its employees acting within the course and scope of their employment and for its own torts.

13. Defendant Joshua Hall is a deputy probation and parole officer in Benton County. In all his conduct described in this complaint Hall was acting within the course and scope of his employment with Benton County.

## FACTUAL ALLEGATIONS

### A. Winter Break 2025-2026: Maverick Lyon is a Star Collegiate Athlete Home for the Holidays with His Family while His Brother is Trying to Get Back on His Feet

14. David and Laura Lyon live and work in Benton County. They raised their four children – Kendra, Dakota, Mikyla, and Maverick – in the family home on Twins Lane, a quiet cul de sac next to North Albany Middle School.

15. Both Lyon boys were prolific athletes, and the family would travel with them and support them in sports.

16. The oldest son, John "Dakota" Lyon, suffered a knee injury that impaired his ability to run and effectively ended his athletic career. He struggled with substance abuse, which eventually led to criminal behavior. Dakota acted violently while under the influence. David and Laura worked tirelessly to get Dakota help and into rehab, but his substance use continued. He was sent to prison in 2023 after pleading guilty to Unlawful Use of a Weapon and Attempted Assault in the First Degree.

17. Dakota was released from prison in November 2025 and placed on post-prison supervision by the Benton County Probation and Parole office. David and Laura agreed to help their son get back on his feet by creating a separate studio apartment in the home with a separate locking door, while also adding extra security measures to their household and implementing supervised access for Dakota while he attempted to re-integrate into society.



LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

18. In late 2025, David and Laura's youngest son, Plaintiff Maverick Lyon, arrived home on winter break from his senior year in college. He was majoring in business and had just one semester left of college and the final lacrosse season of his college career.

19. True to his name, Maverick is a stand-out athlete, especially in lacrosse. In high school, he was recruited by a private boarding school in New Hampshire, the New Hampton School, to play lacrosse. After his high school graduation, Maverick attended Saint Anselm College in Manchester, New Hampshire. In his first three seasons for the lacrosse team, he tallied 43 goals and 14 assists. By his senior year, Maverick was a lead player of the college lacrosse team. His head coach, Drew Bourdeau, described him as the best teammate he had ever seen, "the type of guy that every single coach wishes they had on their team" and "just such a joy to coach."

**B. January 5, 2026: David and Laura Lyon Alert Benton County That Dakota Had Relapsed, Was Again Using Drugs, and Asked for Help Containing His Behavior**

20. Officer Hall came to the Lyon house on January 5 for a home visit. David and Laura Lyon reported that Dakota was again using drugs and that his conduct was concerning. Officer Hall visited with Dakota and confirmed David and Laura's concerns.

21. But Officer Hall left without taking Dakota into custody, despite acknowledging the Lyon's concerns and Dakota's apparent drug use and aggressive behavior.

22. Dakota left the house after Officer Hall departed. He did not come home that night.

**C. January 6, 2026: Maverick is Taken Captive at Knifepoint Inside the House**

23. The next morning, David and Laura went to work. Maverick stayed at the house. Dakota still had not come home.



LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

24. Around 10:00 AM on January 6, 2026, Dakota finally returned home. Maverick was in the kitchen preparing breakfast. Maverick let Dakota into the kitchen and offered to cook him breakfast as well. The brothers ate breakfast together.

25. At approximately 10:28 AM, Dakota used the house phone to call David at work. Dakota spoke to David for nearly 20 minutes. Over the course of the call, Dakota became agitated, delusional, and non-sensical. David became increasingly concerned based on Dakota's behavior.

26. Directly after he hung up the phone, Dakota went to the knife drawer in the kitchen, got a large knife, then grabbed Maverick, telling Maverick that he was his hostage and expressing delusional beliefs about people, including their father, trying to kill them.

27. Maverick pleaded with Dakota to no avail. When pleading with Dakota failed to change his behavior, Maverick switched tactics. He asked Dakota if they needed to be on the same "team" to which Dakota readily agreed. Maverick tried to play along, waiting for an opportunity to get out of the house and run, knowing that Dakota could never catch him.

28. While this was happening, Maverick got himself a knife from the drawer for his own protection, and eventually got Dakota to agree that it was okay for Maverick to have the knife since they were on the same team.

**D. David Lyon Calls 911 Seeking Help Protecting Maverick from Dakota's Knife Threat**

29. When Dakota ended the call with his father, David immediately called Maverick to check in. Maverick did not answer because he could not—Dakota had already taken him hostage. Worried, David used his cell phone to check the Ring camera he had installed in the house. When he accessed the Ring video, David saw Dakota inside the kitchen pointing a knife at Maverick.

30. David immediately called 911.



LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

31. At 10:48 AM, David reported to 911 that his older son had a knife pulled on his younger son. He told the 911 operator that his son Dakota was on parole and on drugs. The 911 operator asked David what Dakota is wearing and David told him that he was shirtless and wearing pajama bottoms. That was the only question the 911 operator asked in terms of description.

32. David left work and immediately drove home.

**E. Albany Police Respond to the 911 Call and Surround the Lyon Home**

33. At approximately 10:56 AM, Albany Police Officers Kenny Allin and Jon Wymore arrived on scene. They went to the front door of the Lyon residence to make contact, but no one answered. After they knocked, they moved far back from the door.

34. At this point, the information known to police made Dakota an armed and dangerous suspect who had taken a hostage, Maverick, by threat of violence with a knife, and was barricading the hostage inside the house and refusing to come out.

35. Documents show Albany Police were familiar with Dakota and knew what he looked like. Police also knew Dakota was not wearing a shirt and Maverick was wearing a shirt.

36. Despite having an apparently armed and barricaded subject with a hostage, no police officer took command control of the incident.

37. Despite having an apparently armed and barricaded subject with a hostage, no police officer attempted to discuss a tactical plan for safely resolving the incident.

38. Despite having an apparently armed and barricaded subject with a hostage, no police officer began the process of activating a SWAT team with attached crisis negotiators to safely resolve the incident.

39. Despite having an apparently armed and barricaded subject with a hostage, no police officer established an inner perimeter or outer perimeter to control the scene.



LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

40. Despite having an apparently armed and barricaded subject with a hostage, no police officer established an incident command structure.

41. Albany Police Officer Matt Thomas arrived shortly after and proceeded around to the back of the residence. He did not stop to discuss with officers Allin and Wymore what their plan ought to be, what information they had about the incident, who would be in charge of tactics, what additional resources they needed, or what additional information they needed. He simply told them he was going around the back and left.

42. In the back of the house, Thomas looked through a window in the back door and saw two men inside the home: one was shirtless and wearing pajama bottoms (Dakota), and the other wore a grey long sleeve shirt (Maverick).

43. Thomas knew that the shirtless subject was Dakota.

44. Thomas knew that the person with the long sleeve shirt was the victim, Maverick.

45. Thomas radioed, "I've got a male back here still has a knife in his hand," and drew his Glock pistol, holding it in a "low ready" position.[1]

46. Thomas saw a man with a knife but did not move back to a position of either distance or cover.

47. Instead, Thomas attempted to open the back door by the handle. The door did not open.

---

[1] A "low ready" position means holding an unholstered firearm with both hands in a firing grip, with the muzzle pointed down toward the ground, usually at a 45-degree angle just below the shooter's line of sight.



LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

48. Thomas stepped back a couple of feet from the back door and began issuing commands: "step away," "I see the knife, step away." Thomas did not address these commands to any particular person and did not call either man by name.

49. Meanwhile, Maverick was inside being held hostage by Dakota. He was trying to find a way out of the situation. Maverick looked outside the back door window and saw Officer Thomas. Maverick looked at Officer Thomas and repeatedly mouthed "Help me!" The Officer was very close, looking into the window, but ignored Maverick and didn't respond.

50. Officer Diaz also arrived at the back door area. Still, no one from the Albany Police Department had established any incident command, nor any command control. Arriving officers did not know what they were arriving to, what their role would be, or what the plan was to safely take Dakota into custody and rescue Maverick.

51. Despite the failure of any of the police officers on scene to communicate either a) who the suspect and who the victim was, or b) any type of tactical plan for ensuring the victim's safety, Diaz drew his firearm and stood prepared to shoot anyone who came out of the door.

52. Dakota spoke from inside the home, still shirtless, still armed with a knife. Dakota spoke to Officer Thomas saying they "are in a bad situation, a brotherly situation." Thomas responded: "I know you're in a situation. Step out here. Step out here."

53. Instead of attempting to create a dialogue with Dakota to de-escalate the situation and safely remove Maverick, Thomas called for a "key" – a battering ram – apparently intending to knock the door down and rush in on the armed and barricaded subject holding a hostage by himself.



**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

54. Thomas made no attempt to address Maverick, the victim of the ongoing crime, to assess Maverick's safety, or warn him as to things he should or should not do to escape the situation.

**F. Albany Police Shoot Maverick Lyon At Least Five Times When He Exited His Home – *After* He Had Dropped the Knife as Instructed**

55. Thomas had commanded Maverick and Dakota to "step out here."

56. After Thomas backed slightly away from the door, Maverick realized he had a small amount of space between himself and Dakota and believed he could make it out the door to the safety of the police before his brother could stop him.

57. At 10:58:31 AM—twelve seconds after Thomas's last command of "step out here"—Maverick opened the back door with his left hand. Maverick was wearing the grey long-sleeve shirt that distinguished him from his shirtless brother.

58. As Maverick opened the door, his left arm extended outward with his hand open and his palm facing down. In his right hand, a knife was visible—the knife he had picked up for self defense against Dakota. As soon as the door was open, and before Maverick crossed the threshold of the door, he dropped the knife. Video shows the knife fell to the brick walkway.

59. No shots were fired while the knife was still in Maverick's hand.

60. Maverick came out the doorway crouched low with both hands extended out where the police could see that he was unarmed.



LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092




61. Thomas shouted at Maverick to "drop it," even though Maverick had already dropped the knife on the brick patio.

62. Officer Thomas began shooting at Maverick despite the fact that Maverick was unarmed and had followed instructions. Thomas fired two shots at Maverick *after* Plaintiff had dropped the knife. One of the bullets went through the outer wall of house, passed through an inner wall, and into a second wall in the house.

63. In the photo above, Maverick is two steps past the point where he dropped the knife and Thomas is firing his first shot from his handgun toward Maverick's head and torso. The knife is visible on the brick patio, appearing behind Maverick's right knee in the photo.



**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092



64. Officer Diaz also began shooting after Maverick had dropped the knife, and after Thomas began shooting.

65. Maverick fell to the ground on his parent's back patio, a few feet from the back door of the home he had just escaped.

66. Diaz continued shooting even after Maverick was laying on the ground, in a fetal position, facing away from the police, posing no threat. Diaz fired a total of five shots. At least one of the bullets tore a hole in the living room wall of the Lyon's home.

67. In the photo above, Thomas is firing his second shot at Maverick's head and torso, while Maverick is falling to the ground and being TASED by another officer and shot at by Diaz. The knife is visible on the patio near Maverick's right foot.



LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092



68. All police officers in the state of Oregon, including Diaz, are trained that they are not justified in using deadly force merely because a fellow officer is using deadly force. Each police officer is responsible for assessing whether the subject poses an imminent threat of death or serious bodily injury to another person.

69. Defendant Thomas knew it was Maverick, the hostage victim, who was shot.

70. While Maverick was lying was on the ground after being shot, Thomas addressed him by name, calling him "Maverick."

71. Maverick was lying on the ground bleeding. Albany Police had shot him at least five times. Maverick suffered gunshot wounds to his chest, back, and face.

72. The officers did not immediately provide medical aid to the innocent victim they had just shot.

73. Instead, Officer Thomas ordered Maverick to turn over and submit to handcuffing.



LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

74. There was no objective probable cause that Maverick Lyon committed any crime on January 6, 2026.

75. Thomas commanded, "Maverick, get on your stomach," despite Maverick having just suffered multiple gunshot wounds to his chest, back, and face.

76. Video shows Maverick telling the officers, "you shot the wrong guy, he was holding me hostage."

77. Thomas and other Albany police officers fumbled through trying to take the victim of this crime into their custody, while Plaintiff was losing precious seconds to stop the internal bleeding that was quickly killing him.

78. Meanwhile, Dakota stood in the doorway of the home, still armed with a knife.




79. Medics arrived and made the officers remove the handcuffs so they could treat Maverick's life-threatening wounds.

## G. Maverick Suffered Catastrophic Injuries and Permanent, Lifelong Damage

80. Maverick suffered at least five gunshot wounds.



LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092





81. Maverick was transported to the Samaritan Corvallis General Hospital via ambulance where he entered emergency trauma surgery in a desperate attempt to save his life.

82. Maverick's first trauma surgery lasted eight hours. Miraculously, the trauma surgeons and emergency medical staff at Samaritan saved Maverick's life. But it resulted in severe, permanent changes to his body. Trauma surgeons removed almost half of Maverick's right lung, removed his spleen, and removed his appendix. Maverick also underwent a complete reconfiguration of the duodenum area. For days, it was uncertain whether he would survive.

83. Maverick was conscious after the surgery and terrified he was going to die.



**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092




84. During this time, Maverick struggled to speak. He would write short notes to his family to communicate. Some of his notes to his parents read, "I love you guys," "I don't want to pass[,] die," "am I going to live," "can you ask survival rate" and "how much of my nose is missing".

85. Maverick was hospitalized for four weeks. His condition eventually stabilized and he faced months of recovery and continued treatments.

86. He was discharged with feeding and waste tubes in place. He had to stay with his parents while they shuttled him to near daily doctor and physical therapy appointments, as well as additional surgeries.

87. With excellent medical care, the support of his family, and sheer determination, Maverick returned to his college campus in the summer.

88. However, his life is forever changed.

## H. Plaintiff Timely Filed a Tort Claim Notice

89. Plaintiff timely sent a tort claim notice to the City of Albany.



LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

90. Plaintiff timely sent a tort claim notice to Benton County.

**FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983 – Violation of the Fourth Amendment – Excessive Force**

**(Against Defendants Thomas and Diaz)**

91. Plaintiff incorporates paragraphs 1-89 by reference.

92. At all times described herein, Defendants Thomas and Diaz were acting under color of law.

93. Thomas and Diaz's use of deadly physical force against Plaintiff violated Plaintiff's right to be free from the use of excessive force under the Fourth Amendment to the United States Constitution, as the use of force was objectively unreasonable under the circumstances described above.

94. As a direct and proximate result of Defendants' conduct, Plaintiff suffered serious physical injuries, severe pain and suffering, and lasting physical impairment.

**SECOND CAUSE OF ACTION**

**Battery**

**(Against Defendants City of Albany, Thomas, and Diaz)**

95. Plaintiff incorporates paragraphs 1-89 by reference.

96. At all times described herein, Defendants Thomas and Diaz were acting within the course and scope of their employment for the City of Albany.

97. As described above, the use of deadly force by Thomas and Diaz was an intentional use of unlawful physical force.

98. As a direct and proximate result of Defendants' conduct, Plaintiff suffered serious physical injuries, severe pain and suffering, and lasting physical impairment.



**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**THIRD CAUSE OF ACTION**

**Negligence**

**(Against Defendants City of Albany, Thomas, and Diaz)**

99. Plaintiff incorporates paragraphs 1-89 by reference.

100. At all times described herein, Defendants Thomas and Diaz, and every other Albany police officer who responded to this incident, were acting within the course and scope of their employment for the City of Albany.

101. Defendants were negligent in one or more of the following ways:

a. Failing to establish an incident command structure or any command control of an incident where they knew they had an armed, dangerous, and barricaded subject holding an innocent victim hostage;

b. Failing to even discuss or communicate in any way some kind of tactical plan for safely resolving an incident where they knew they had an armed, dangerous, and barricaded subject holding an innocent victim hostage;

c. Failing to establish communication with either the criminal subject or the victim;

d. Failing to maintain distance or cover while ordering an armed subject to come out of the house;

e. Failing to issue any warning that, if either the subject or victim exited the house with a knife, they would immediately be shot;

f. Failing to identify and communicate the identities of the victim and subject to all officers on scene;



LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

g. Opening fire on Plaintiff when he had already dropped the knife and was unarmed, falling to the ground; and

h. Continuing to fire on Plaintiff after he was on the ground.

102. Defendants knew, or in the exercise of reasonable care should have known, that the acts and omissions set forth above created an unreasonable risk of foreseeable harm to the occupants of the home responding to police commands, including Plaintiff.

103. Defendants' negligence caused Plaintiff to suffer serious physical injury, pre-impact terror and anguish, severe and ongoing pain and suffering, and lasting physical impairment.

**FOURTH CAUSE OF ACTION**

**Negligence**

**(Against Defendants Benton County and Hall)**

104. Plaintiff incorporates paragraphs 1-90 by reference.

105. At all times described herein, Defendant Hall was acting within the course and scope of his employment for Benton County.

106. Defendant Hall was negligent in failing to take any action to protect Maverick, Laura, and David Lyon from Dakota Lyon.

107. Hall knew, or in the exercise of reasonable care should have known, that the acts and omissions set forth above created an unreasonable risk of foreseeable harm to the occupants of the home, including Plaintiff.

108. Hall's negligence was a proximate cause of Plaintiff's injuries described above.

**DEMAND FOR JURY TRIAL**

109. Plaintiff demands a jury trial on all issues so triable.



LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the Court award the following relief:

a. Judgment in favor of Plaintiff and against all Defendants for economic and noneconomic damages in an amount to be proven at trial;

b. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

c. Prevailing party fees, costs, and disbursements to the extent permitted by law;

d. Interest on all sums awarded, including pre-judgment and post-judgment interest to the extent permitted by law; and

e. For such other and further relief as may appear just, equitable, and appropriate.

**DATED** this 2nd day of November, 2026.

**STRITMATTER LAW**

By: *s/ Alicia LeDuc Montgomery*
**Alicia LeDuc Montgomery, OSB NO. 173963**
alicialm@stritmatter.com
3600 15th Ave. West, #300
Seattle, Washington 98119
(206) 448-1777

**LEVI MERRITHEW HORST PC**
**Jesse Merrithew, OSB NO. 074564**
jesse@lmhlegal.com
610 SW Alder Street, Suite 415
Portland, Oregon 97205
(971) 229-1241

*Attorneys for Plaintiff Maverick Lyon*